FIDELITY & DEPOSIT COMPANY OF MARYLAND, APPELLANT, V.
JOE LAPIDUS ET AL., APPELLEES.

286 N. W. 386

FILED JUNE 16, 1939. No. 30592.

*D. O. Dwyer* and *W. L. Dwyer*, for appellant.

*W. A. Robertson* and *Leon & White, contra.*

Heard before ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

JOHNSEN, J.

Plaintiff has appealed from a judgment for defendant Erna Lapidus, on a contract which she executed with her husband, Joe Lapidus. The case was tried without a jury, and the court gave judgment against defendant Joe Lapidus, but denied recovery against Erna Lapidus on the ground that she had not bound her separate estate. The sole question necessary to be considered is whether the evidence sustains this finding.

Joe Lapidus had obtained a mortgage loan on some real estate owned by him, but because of some mechanics' liens, which he was disputing, the mortgagee withheld part of the loan proceeds. To obtain their release, he agreed to provide a surety company bond, saving the mortgagee harmless from the lien claims. Plaintiff executed this bond as surety.

An application form was required to be executed for the bond. This named Joe Lapidus and Erna Lapidus as the applicants; contained a financial statement listing real estate and other assets valued at $163,000, with $62,000 encumbrances thereon; recited that "the undersigned * * * represent that the statements made herein as an inducement * * * to execute the bond applied for herein are true;" agreed that the applicants would "indemnify * * * against all loss * * * and expenses whatever, which the company may sustain or incur by reason of executing said bond;" and provided that "the above agreements shall bind the undersigned and the heirs, executors, administrators, successors

and assigns of the undersigned, jointly and severally." Erna Lapidus signed the application with her husband.

Plaintiff claimed to have sustained a liability and loss of $1,425, by virtue of having executed the bond, and brought this action for reimbursement on the indemnity agreement in the application.

The evidence shows that, when Lapidus came to execute the application, the agent through whom the bond was being obtained requested that Erna Lapidus also sign as "a matter of form," because she had signed the note and mortgage and would have to join in the bond; that Lapidus took the application out and had it signed by her; that she had no interest in the mortgaged property, against which the mechanics' lien claims existed, and had received no part of the loan proceeds; that none of the property listed in the financial schedule in the application was owned by her, and that the only interest she had ever had therein was as the wife of Joe Lapidus. She was permitted to testify also, over objection, that, in executing the application, she had no intention to obligate herself personally or to bind any separate estate that she might have.

While the application contains no clause by which Erna Lapidus expressly binds her separate estate, plaintiff argues that the provision that "the above agreements shall bind the undersigned and the heirs, executors, administrators, successors and assigns of the undersigned, jointly and severally," must be accorded this meaning and significance. We cannot say, as a matter of law, that this language conclusively establishes an intention to bind her separate estate. It simply declares that such obligation as has been created against Joe Lapidus and Erna Lapidus under the preceding provisions of the application shall be binding on their heirs, executors, administrators and assigns. It does not purport to extend the scope of the previous obligation of either of them. The most, therefore, that plaintiff can claim from it is the right to argue that it shows, by inference, an intention on the part of Erna Lapidus to bind her separate estate. It would still leave the question of in-

tention to be determined from all the circumstances and would not preclude parol evidence on the issue.

The rules governing a married woman's liability in this state are now well settled. Except in so far as it has been abrogated by statute, her common-law disability is still in force. *Grand Island Banking Co. v. Wright,* 53 Neb. 574, 74 N. W. 82. She is without capacity to contract, except in reference to her separate property, trade or business, or upon the faith and credit of her separate estate and with the intent to bind it. Comp. St. 1929, ch. 42, art. 2; *Godfrey v. Megahan,* 38 Neb. 748, 57 N. W. 284. Where the contract does not have reference to her separate property, trade or business, proof of such intent on her part is necessary. The burden of establishing such intent rests on the party seeking to bind the separate estate. *John Fletcher College v. Estate of Pailing,* 121 Neb. 847, 238 N. W. 750. If the contract contains a valid provision expressly and unequivocally binding her separate estate, this is conclusive proof of such intention, and it cannot be contradicted by parol evidence. *Sturm v. Lloyd,* 130 Neb. 89, 264 N. W. 150. Where the contract does not in express terms bind her separate estate, the question is one of fact to be determined from all the circumstances. In such a situation, her testimony that she did not intend to bind her separate estate is competent. *Falstaff Brewing Corporation v. Smith, ante,* p. 49, 284 N. W. 868.

Under these rules, it was proper for the trial court, in determining whether Erna Lapidus had bound her separate estate, to receive evidence that she had signed the application as a matter of form; that she had no interest in the mortgaged property, in connection with which the bond was executed; that she had received no part of the loan proceeds; that none of the property listed in the financial statement was hers; and that she never intended to create a personal liability or to bind any separate estate she might have. This evidence, in the state of the record, was sufficient to sustain the judgment of the trial court. Plaintiff offered no evidence to contradict it, except such as is argued to

inhere in the recitals and provisions in the application, which have already been discussed.

Plaintiff asserts that the request that Erna Lapidus sign the application was made by the First Trust Company of Omaha as agent of the mortgagee and not as agent of the bonding company, and that it therefore is not bound by any representation that her signature was a mere matter of form. Without considering whether, if this were true, the evidence would still be sufficient to sustain the judgment, it seems to us that the trial court was justified in taking the view that the First Trust Company of Omaha acted as plaintiff's agent in the transaction, even though it also was the agent of the mortgagee in making the loan. Lapidus testified that it sold him the bond. He knew no one else in the transaction. It took his application, had the bond issued pursuant thereto, and apparently collected the premium. In addition, the cover of the bond bore its endorsement: "First Trust Company of Omaha—Insurance." In the absence of any evidence denying or disproving its representative capacity, this was sufficient to justify the finding that it acted as plaintiff's agent, and that its request that Erna Lapidus sign the application as a matter of form was the request of plaintiff.

The recitations and provisions in the application are claimed to estop Erna Lapidus to deny that she intended to bind her separate estate. It is said that, since she signed the application jointly with her husband, its statements are binding jointly on them; that she ought not, therefore, to be permitted to prove that she had no interest in the property listed in the financial statement, but that it should be conclusively presumed that she had an interest and that she intended to bind it as her separate estate. Even if she had an interest in or owned part of the property listed in the financial statement, this would not be sufficient to estop her, as a matter of law, to deny that she intended to charge her separate estate, although it might be evidence against her on that issue. *Falstaff Brewing Corporation v. Smith, supra.* The case cited indicates that, since a

married woman has no power to contract without an intent to bind her separate estate, her want of legal capacity cannot be supplied by estoppel. Certainly, she cannot enlarge her contractual capacity by her own acts. 30 C. J. 875. Whether any situation can exist where, within the scope of the contractual power given her by statute, she may be estopped to assert that she did not intend to bind her separate estate need not be determined in this case. The facts do not require such a determination.

The evidence sufficiently sustains the trial court's findings and judgment.

AFFIRMED.